## BALLAS EGG PRODUCTS CO., INC., Plaintiff, v. AMALGAMATED MEAT CUTTERS AND BUTCHER WORKMEN OF NORTH AMERICA et, Defendants.

Common Pleas Court, Muskingum County.

No. 41319.   Decided April 27, 1959.

Graham, Graham, Gottlieb & Johnston, Zanesville, for plaintiff.
David Clayman, Columbus, for defendants.

## OPINION

By CROSSLAND, J:—

While organizational picketing of a plant or business engaged in interestate commerce, including so-called "stranger picketing," is now held to be within the exclusive jurisdiction of the federal courts ordinarily, nevertheless the power to enjoin mass picketing, threats to employees desiring to work, physical injury or property damage, obstruction of the entrance to and egress from the place of work, obstructing streets and public roads surrounding such place, and picketing the homes of employees, remains within the realm of concurrent state court authority. However, even this exception is currently challenged by a dissenting minority of the United States Supreme Court.

At the present time state courts retain authority to protect the right of any individual engaged in lawful work or business to proceed unmolested and uninterrupted to and from his or her place of work or business, the only court authority readily available to provide such protection. Without local court authority such basic and constitutional right of local citizens would be illusory because federal court protection would be remote in time and place.

The defendant Union and its officers avowedly would like to be able

to discourage attendance at work of plaintiff's employees to an extent that would completely shut down the local plant and throw the existing employees numbering about eighty, mostly women, out of work, until such time as it can hope to obtain enough of them as its members to be able to act for them in their employment by plaintiff. This the Union is free to try to do, regardless of the wishes of those presently employed, under existing federal law as construed by the United States Supreme Court. The only limitation thereon is to refrain from the use or threat of force.

This case is in this court only because plaintiff claims the defendant Union, officers and members exceeded the bounds of peaceful picketing and created local disorders and disturbances that are presently cognizable under the existing jurisdiction and authority of a state court.

Defendants admit that there were certain incidents on April 16th and 17th, uninspired by them and contrary to their wishes and instructions. They also admit the presence of from fifteen to twenty pickets from the first day of picketing, April 13th, through the 15th and perhaps upwards of but less than thirty-five on the 16th. The petition herein was filed on the 18th and there have been fewer pickets and no disorders or disturbances since the 17th.

Plaintiff contends that picketing should be enjoined altogether, while defendants concede that under the circumstances of past occurrences picketing may be restricted and defined but not eliminated.

There are three places or points of entrance and exit for persons and cargoes, two on the east or alley side and one on the west or street side. Of the former, one, the north or toward Market Street, is for persons entering the office or plant, and the other, the south, is considerably above alley level and is intended and used for cargoes. The west entrance and exit is much wider, on sidewalk level, and is used by both pedestrians and motor vehicles. It is here that most trouble occurred, the principal focal point of controversy.

For example, four pickets in close file were proceeding northerly across the line of vehicular traffic into the plant parking lot, aware of the impending turn into said lot of a passenger automobile of employees approaching from the south and either ignored or disputed its intended entrance, with ensuing violence upon its driver by the foremost picket. This occurred during the afternoon of the 16th. After dark a truck undertaking to deliver eggs was stopped and turned back and during the night its cargo loosened and a tire slashed. A second truck was jumped and window broken. Some employees were cursed and berated. Altogether there was unquestionable provocative and disruptive conduct on the part of persons engaged or associated in the picketing, plainly calculated to foment strife, incite hatred and instill fear.

The seeds of the disorders and personal violence lay in the inception of mass picketing and for this the Union and its officers were and are directly responsible, as the event of the picketing itself was brought about by these defendants and they directly superintended and directed the picketing operation. It is quite likely that they hoped to achieve a quick and effective shut-down in order to effectuate their declared pur-

pose of putting plaintiff's local plant out of business or operation before counter measures could be devised or invoked. Illustrative of such hope is the fact that employees were telephoned Sunday that the plant would not open Monday.

When the defendant Union and its officers caused and created picketing at plaintiff's premises for its own organizational purposes the Union thereby assumed full responsibility for the events and occurrences that ensued therefrom, whether intended by or knowledgeable to it or not. The picketing was its and their own project and undertaking, for the Union's own objectives, and the Union will be considered and held answerable herein throughout for all matters and events in any way relating to or eminating therefrom. That is the only logical and responsible way to have and to maintain accountability in the Union's self-instituted project of seeking to discourage non-union work or employment at plaintiff's Zanesville plant.

The Court is making its position clear in this respect in advance so that there will be no occasion for equivocation in the future if acts or conduct violative of law or court order should occur for which the Union might seek to disclaim knowledge or intention. Union responsibility will be presumed from the fact that it instigated, directs and operates the picketing for the openly avowed and declared purpose of seeking to put plaintiff's local plant out of business if it cannot organize the plant's employees so as to represent them in their employment by plaintiff. Hence, any future such violation act or conduct, as may be shown and found by the Court to have occurred, will result in complete and enforced abandonment of whatever limited picketing may be permitted meantime, and defendants are put on present notice thereof by this written Opinion.

This Court has heretofore held that:

"Mass picketing is unlawful per se and unallowable;

"When ingredients are present that will probably result in consequences occasioning injury or damage, the anticipated consequences need not first occur in order for a complainant to be entitled to injunctive relief;

"Public alleys and sidewalks, intended primarily for vehicular and pedestrian travel, can not otherwise be utilized to the exclusion or restriction of either." (**Zanes, Pub. Co., v. Int. Typ. Union, 75 Abs 173.**)

There is no sidewalk whatever on or along the east side of plaintiff's premises and the two openings on that side into and out of plaintiff's plant can be approached and reached only by proceeding some little distance into Beech alley from Market Street on the north and for a considerable distance from Main Street on the south. The nearest sidewalk fronts and abuts the Rogge Hotel and business rooms therein of The American Railway Express. A public alley, no more than a public street, may not be utilized for regular and concerted standing and walking of persons whose business is to parade placards before and in front of another's premises. It may be traversed only to the limited extent necessary to move quickly and directly over or across and into or out of in order to reach or leave an off-alley destination. This Court

has heretofore declined to undertake to dispute with the City of Zanesville the proper and intended use of its streets and alleys and will not do so in this or any other case. Accordingly, there can be no picketing legitimately in Beech Alley, even with Court order, but this Court affirmatively disapproves of any such street or alley misuse and will not permit picketing therein in any event.

There is then in question only one place of ingress and egress, the particularly troublesome one of considerable width and area on Second Street, somewhere midway between Market Street and Fountain Alley. There is a sidewalk on this east side of North Second Street, which extends across the front of the parking and main delivery area and in and out of which many employees enter and leave. Two pickets, each with a Union sign, were observed on that sidewalk last Friday by the undersigned judge of this Court shortly after the conclusion of the within hearing. In fact, they were the only two persons observable at all at that time on any of the four sides of plaintiff's premises. They were seated together on the walk, immediately south of said entrance, but arose to their feet and began to walk as the undersigned approached and passed. A few other persons, apparently interested or allied, were seated in an automobile in the parking ground on the other side of Second Street, facing the two women pickets.

It is the Court's conclusion, that while the Union and its officers possessed full knowledge of the responsibility and limitation of peaceful picketing at the very outset and should have made certain the avoidance of mass picketing and the incidents and violence that were calculated to arise by the very nature of its own immediate designs unless it acted affirmatively to obviate and prevent them, if it really wanted to do so, it would possibly be an abuse of discretion to deny picketing altogether before first making an appropriate order of limitation.

Two pickets only will be permitted at any one time, entirely south of the street entrance to plaintiff's premises and at no time or under any circumstance to cross or pass in front of any part or portion of the front of the area entrance. Each of such pickets shall walk from opposite ends of the sidewalk between said south entrance line and Fountain Alley and pass each other approximately midway between, being and remaining separate at all times and neither stopping singly nor together, at all times moving along only one side of the walk, so as to provide ample passing room for any of plaintiff's employees arriving or leaving over or along said walk.

Henceforth, before any person may act as either such picket, a regularly scheduled, authorized list of names, home addresses and hours of picket duty, shall be prepared, followed and retained by the Union, available at the request of the Court at all times and if not done or if departed from and unamended as to any specific departure, picketing shall thereupon cease in all respects and not be resumed unless and until full and entire compliance herewith.

Defendants, their agents, servants, representatives and employees, are ordered and temporarily enjoined generally and specifically from interference in any manner, directly or indirectly, expressly or impliedly, at work or homes with plaintiff's employees or employment, at or in its

550

business or work operation, by any means, excepting only the peaceful persuasion of ordinary civil and courteous conversation in addressing them. For the purpose of a formal Order and Journal Entry the specific restrictions and limitations herein stated may be supplemented by the usual particular items and paragraphs deemed proper and adequate for assured effectiveness, such as were contained in the earlier case number 40597, and with bond to be furnished by plaintiff in the amount and sum of One Thousand Dollars.

Filing of this Opinion shall be notice to the defendants of its contents, for whom copies are available upon call at the office of the Clerk.